IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. )<br>    FERNANDO GARCIA, )<br>                                           )<br>             Petitioner, )<br>   v. )<br>                                           )<br>DAVID REDNOUR, Warden, )<br>    Menard Correctional Center, )<br>                                           )<br>           Respondent. ) | No. 10 C 6380<br><br>Judge Robert W. Gettleman |

## **MEMORANDUM OPINION AND ORDER**

Petitioner Fernando Garcia, an inmate incarcerated at the Menard Correctional Center, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that his guilty plea was not knowing and voluntary, and therefore violated his Fifth and Fourteenth Amendment rights to due process, because the trial court failed to ensure that he understood the nature and elements of the charges to which he was pleading guilty, and failed to admonish him of the appellate consequences of his plea. For the following reasons, the petition is denied, and the court declines to issue a certificate of appealability.

## **BACKGROUND**[1]

Petitioner was charged by indictment in DuPage County, Illinois, with: (1) seven counts of home invasion; (2) five counts of criminal sexual assault; and (3) two counts of criminal sexual abuse. At the arraignment, petitioner's counsel received a copy of the indictment and

---

[1] Absent clear and convincing evidence to the contrary, which petitioner has not presented, all facts developed in state court and described herein are presumed to be correct. 28 U.S.C. § 2254(e)(1).

waived formal reading. The court asked petitioner whether he understood the charges against him; he answered, "Yes." Petitioner entered a plea of not guilty to each of the charges.

On March 24, 2003, petitioner withdrew his not guilty pleas and pleaded guilty to one count of home invasion and five counts of criminal sexual assault, and the prosecution moved to nolle prosequi the remaining charges. The court asked petitioner whether he understood the nature of the charges against him, and the elements of those charges; petitioner responded that he did. The prosecution read the factual basis for the plea, and the court "made a finding that there [was] a factual basis to support the pleas" and that they were "both made knowingly and voluntarily."

Before petitioner was sentenced, the parties became aware that the trial court had incorrectly admonished petitioner about the sentencing range he faced: the court had stated that petitioner faced a sentencing range of twenty-six to sixty years, but the proper sentencing range was twenty-two to ninety years. Recognizing that this entitled petitioner to withdraw his guilty plea, the prosecution proposed a plea agreement under which, as "additional consideration for" petitioner's decision to not withdraw his plea, the prosecution would recommend a sixty-year sentence and the sentence would be capped at seventy years.

At the second change of plea hearing, the court explained to petitioner that he was charged with one count of home invasion and five counts of criminal sexual assault. Petitioner responded "yes" when the court asked whether he understood the nature of each of those charges and what the State would have to prove to convict him. The prosecutor then read the factual basis of the plea. Petitioner agreed to the prosecution's terms and entered a new plea of guilty. The parties agree that this was a "negotiated" plea under the terms of Illinois Supreme Court

Rule 604(d), which includes in its definition of a negotiated guilty plea one "where the prosecution has made concessions relating to the sentence to be imposed . . . ." 188 Ill. 2d R. 604(d).[2]

At sentencing, the parties stipulated that when petitioner entered his plea, he had not been correctly advised of the maximum sentence he faced. The court sentenced him to a total of fifty-two years' imprisonment, well under the seventy-year cap.[3] The court advised petitioner that to appeal from his sentence, he needed to first file either a motion to vacate his guilty plea or a motion to reconsider his sentence. The second half of that admonishment was incorrect; because his plea was "negotiated," the court should have instructed petitioner that before appealing, he needed to move to vacate the judgment and withdraw his plea.[4]

After filing a motion to reconsider his sentence, which was denied, petitioner appealed. The State conceded the trial court's admonishments had not complied with Illinois Supreme

---

[2] The parties agree that petitioner's original plea was a "blind" plea and therefore not "negotiated." This is substantiated by the plea hearing transcript: in response to the court's asking whether the parties had a plea agreement, the prosecutor replied, "No, Judge. Actually, it would just be a blind plea." But the Illinois Appellate Court noted in its Rule 23 Order (affirming the trial court's order denying petitioner's motion to withdraw his guilty plea) that petitioner's March 24, 2003, plea was itself a partially negotiated plea: petitioner agreed to plead guilty in exchange for the prosecution's dropping certain counts. People v. Garcia, No. 2-06-0909 (Ill. App. 2008) (unpublished order pursuant to Illinois Supreme Court Rule 23 at 2 n.1) (citing People v. Malin, 359 Ill. App. 3d 257, 263-64 (2005)).

[3] Specifically, the court sentenced petitioner to twenty years for home invasion, eight years for each of four counts of criminal sexual assault, all to run consecutively, and an eight-year sentence for the fifth count of criminal sexual assault, to run concurrently with the home invasion sentence, for a total of fifty-two years' imprisonment.

[4] When a trial court imposes judgment based on a negotiated guilty plea, Rule 605(c) requires the court to admonish the defendant "that prior to taking an appeal the defendant must file in the trial court, within 30 days of the date on which sentence is imposed, a written motion asking to have the judgment vacated and for leave to withdraw the plea of guilty, setting forth the grounds of the motion."

3

Court Rule 605(c). The Illinois Appellate Court agreed, and remanded to the trial court to properly admonish petitioner. People v. Garcia, No. 2-04-0810 (Ill. App. Ct. 2006) (unpublished order pursuant to Illinois Supreme Court Rule 23). On remand, the trial court properly admonished petitioner that he could appeal only after timely moving to withdraw his plea.

    Petitioner subsequently filed a motion to withdraw his guilty plea, arguing that:

(1)    he "did not knowingly, intelligently, or voluntarily waive his right to a trial";

(2)    he "did not fully understand or comprehend the admonishments"; and

(3)    he believed that he could "appeal the severity" of any sentence he received, and his counsel had not told him otherwise.[5]

At the trial court's hearing on the motion to withdraw the guilty plea, petitioner reiterated this argument, stating that he thought he would have "the right to appeal after the sentence, no matter what the sentence was."[6] Petitioner also argued that Illinois Supreme Court Rule 402(a) was flawed because it did not require the trial court to inform the defendant of every direct consequence of a guilty plea, including whether the sentence is appealable. The trial court denied petitioner's motion, finding that petitioner

---

[5] Under Illinois law, a defendant who pleads guilty in exchange for a sentencing cap and whose sentence falls below that cap, cannot challenge his sentence as excessive unless he succeeds in first vacating his plea. People v. Linder, 708 N.E.2d 1169, 1173 (Ill. 1999).

[6] Q:    At the time you entered [your February 2004] plea, what was your understanding regarding any right you had to appeal?
    A:    Well, in my mind, it was always I thought I had the right to appeal after the sentence, no matter what the sentence was.
    Q:    Is there any specific reason why you thought that?
    A:    Well, you know, my attorney never told me that I was—I wasn't going to be able to challenge my case at that time.

knew exactly what the bargain was and what he was accepting. I don't find anything in the review of these two transcripts that would indicate that he did not knowingly, freely, voluntarily intelligently [sic] enter his plea of guilty to the charges pursuant to the caps and, in fact, received a sentence of 52 years after getting the assurance from the judge that she would not go above the 60, even though she could go to 70.

If there is—if this isn't a bargain that the defendant knowingly entered into, I have never read one, in this Court's opinion. I think Mr. Garcia received the benefit of the bargain and is now attempting to withdraw that plea.

I don't believe that the Court was in any way required to admonish Mr. Garcia prior to taking the plea as to any Appellate consequences.

Petitioner appealed, rasing three arguments:

(1) he "did not know that he was waiving review of his sentence by agreeing to re-enter his plea with a 'cap' in place, and he was prejudiced as a result";

(2) "[t]he judge did not substantially comply with Rule 402(a) because she failed to determine that [petitioner] understood the nature and elements of the charges and she did not admonish him of the applicable sentencing provisions, including that consecutive sentencing was mandatory in his case"; and

(3) the appellate court "should consider the cumulative effect of all the ways in which [petitioner] was confused and misled and order that he be allowed to withdraw his guilty plea because it was not knowingly made."

Petitioner's Direct Appeal Brief at 17, 30, 41, People v. Garcia, No. 2-06-0909. The Illinois Appellate Court affirmed. People v. Garcia, No. 2-06-0909 (Ill. App. Ct. 2008) (unpublished order pursuant to Illinois Supreme Court Rule 23).

Petitioner filed a petition for leave to appeal ("PLA") in the Illinois Supreme Court, raising the first two claims he had raised in the state appellate court. The Illinois Supreme Court denied leave to appeal. Order Denying PLA, People v. Garcia, No. 107131 (Ill. Nov. 26, 2008). He thereafter petitioned the United States Supreme Court for a writ of certiorari, arguing that the trial court deprived him of due process when it failed to admonish him on: (1) the elements of the offenses to which he pled guilty; and (2) the fact that entering a guilty plea in exchange for a

5

sentencing cap would constitute a waiver of his right to appeal a sentence below that cap. The United States Supreme Court denied his petition. Order Denying Petition for Writ of Certiorari, Garcia v. Illinois, No. 08-9607 (Oct. 5, 2009).

Petitioner then filed the instant petition for a writ of habeas corpus, raising two claims:

(1) the trial court violated his due process rights by failing to determine whether he "understood the nature and elements of the charges to which he was pleading guilty"; and

(2) the trial court violated his due process rights, and rendered his guilty plea unknowing and involuntary, when it failed to admonish him that pleading guilty in exchange for a sentencing cap waived his right to challenge any sentence below the cap.

## **DISCUSSION**

### I. **Petitioner's First Claim**

Under the Antiterrorism and Effective Death Penalty Act of 1966 ("AEDPA"), 28 U.S.C. § 2254, the court may grant habeas relief only when the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Petitioner argues that the Illinois Appellate Court unreasonably applied Supreme Court precedent when it affirmed the trial court's determination that because his plea was entered into intelligently, he was not entitled to withdraw his guilty plea. For the following reasons, petitioner is incorrect.

The Supreme Court has succinctly explained that "[a] guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v.

Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). This standard is met only if the defendant "first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)). Further, due process is violated when "a defendant pleads guilty to a crime without having been informed of the crime's elements." Bradshaw, 545 U.S. at 183. But even where, as here, neither the trial judge nor defense counsel explained the elements of the charges to the defendant on the record, the Supreme Court has established a presumption that "defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." Henderson v. Morgan, 426 U.S. 637, 647 (1976).

Petitioner argues that Bradshaw eliminated, or at least cast doubt upon, Henderson's presumption that a defendant represented by competent counsel has been informed of the nature and elements of the charges against him. In Bradshaw, the Court reversed a court of appeals' finding that the defendant's plea was invalid because the trial judge had not explained to him every element of the offense. 545 U.S. at 186. In that case, however, the record reflected that the defendant's attorneys represented, and the defendant confirmed, that they had explained the elements to him. Id. at 183. The Court reasoned that

> we have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.

Id. at 183. There, competent counsel had made on-the-record "assurance[s] that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." Id. The Court thus had no need to address the viability of the Henderson presumption

7

that competent counsel has explained the nature of the offense to his client off the record. Therefore, petitioner's reading of Bradshaw is overbroad; it did not, as he contends, establish a rule that a guilty plea complies with due process only if the record reflects that the court or competent defense counsel informed petitioner of the nature and elements of the charges against him.

In addition, respondent argues that the record amply demonstrates that petitioner understood the nature of the charges against him. To support this argument, respondent points to petitioner's counsel's receipt of the indictment, as well as several occasions on which petitioner stated, in response to the trial court's questioning, that he understood the charges against him. At petitioner's arraignment on April 22, 2002, the prosecution gave petitioner's counsel a copy of the indictment, which described the elements of every charge against him. Respondent argues—and petitioner does not dispute—that counsel's receipt of the indictment itself invokes a "presumption that the defendant was informed of the nature of the charge against him." Bousley v. United States, 523 U.S. 614, 618 (1998) (citing Henderson, 426 U.S. at 647; id. at 650 (White, J., concurring)). Also at the arraignment, the court asked petitioner, "do you understand what you are charged with?" Petitioner responded, "yes." Next, before accepting petitioner's first guilty plea, the court again asked petitioner whether he was aware of and understood the nature of the charges against him, and the elements of those charges; petitioner answered in the affirmative.[7] Finally, before accepting petitioner's second guilty plea, the court took steps to

---

7    Court:    [U]pon dismissal of [the other] charges, sir, you now would stand charged with one count of home invasion, a Class X felony, and five counts of criminal sexual assault, all charged as Class 1 felonies. Do you understand?
Petitioner:    Yes.
Court:    Do you understand the nature of those charges?

ensure that petitioner understood the nature and elements of the charges against him.[8] These repeated affirmations that he understood the nature and elements of the charges against him, coupled with his competent counsel's receipt of the indictment, belie petitioner's claim that his guilty plea did not comply with due process.

Petitioner disputes this conclusion, arguing that these "superficial ritualistic colloqu[ies were] insufficient to show that [petitioner] actually understood the nature and elements of the six separate charges to which he was pleading guilty." But petitioner cannot overcome the fact that the state courts did not unreasonably apply Supreme Court precedent—which allows a court to presume that receipt of an indictment, and the existence of competent counsel, indicate that a guilty plea comported with due process—when they determined that petitioner was sufficiently apprised of the charges against him.

Thus, for the foregoing reasons, the court denies habeas relief on petitioner's first claim.[9]

---

[8]
| | Petitioner: | Yes. |
| --- | --- | --- |
| | Court: | Do you understand what the State would have to prove in order to convict you of those offenses? |
| | Petitioner: | Yes. |
| | Court: | . . . [U]pon dismissal of 2, 3, 4, 5, 6, 7, 8, 14 and 15, you stand charged with the allegations contained in Count 1, which is home invasion, and Counts 9, 10, 11, 12 and 13, which are Class 1 criminal sexual assault charges. Do you understand the nature of each of those charges? |
| | Petitioner: | Yes. |
| | Court: | Do you understand what the State would have to prove in order to convict you of each of those offenses? |
| | Petitioner: | Yes. |

[9] Respondent also argues that petitioner's claim is barred by the rule established in Teague v. Lane, 489 U.S. 288 (1989). The Supreme Court held in Teague that generally, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Id. at 310. Because petitioner's claim is not based on a new procedural rule of constitutional dimension, Teague would not apply here. See Bousley, 523 U.S. at 620 ("But we do not believe that Teague governs this case. The only

## II. Petitioner's Second Claim

Petitioner claims that the trial court deprived him of his Fifth and Fourteenth Amendment rights to due process by failing to inform him that, by entering into a negotiated guilty plea with a sentencing cap, he was waiving his right to appeal if the court chose to impose a sentence below the cap.

Petitioner failed to fairly present this issue as a federal constitutional clam to the Illinois Appellate Court on direct appeal and to the Illinois Supreme Court in his petition for discretionary review. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) (holding that, to avoid procedural default, a habeas petitioner must present all of his claims to the Illinois Appellate Court and the Illinois Supreme Court). The Illinois Appellate Court characterized petitioner's claims as follows:

> On appeal, defendant argues that the trial court erred in denying his motion to withdraw his guilty plea because (1) when he agreed to enter his second partially negotiated plea, defendant did not understand that consequently he would not be able to challenge the severity of his sentence on appeal; (2) the trial court did not comply with Rule 402(a); and (3) the plea proceedings in this case were fundamentally unfair because defendant's misapprehension of the law and the flaws in the plea proceedings cumulatively rendered defendant's plea unknowing.

People v. Garcia, No. 2-06-0909 (Ill. App. Ct. 2008) (unpublished order pursuant to Illinois Supreme Court Rule 23, at 7).

Other than petitioner's argument that the court had violated his due process rights by failing to explain the charges against him, none of these claims involved federal constitutional law. The first claim was a purely state-law claim, relying on state-law cases: People v. Linder,

---

constitutional claim made here is that petitioner's guilty plea was not knowing and intelligent. There is surely nothing new about this principle, enumerated as long ago as Smith v. O'Grady[, 312 U.S. 329 (1941)].").

708 N.E.2d 1169, 1172 (Ill. 1999), which held that "[b]y agreeing to plead guilty in exchange for a recommended sentencing cap, a defendant is, in effect, agreeing not to challenge any sentence imposed below that cap on the grounds that it is excessive"; and People v. Spriggle, 831 N.E.2d 696 (Ill. App. Ct. 2005), which applied Linder in a situation factually similar to petitioner's. The second claim comprised two distinct arguments, neither of which involved sentencing caps: (1) the judge did not explain the nature and elements of the charges; and (2) the judge did not adequately explain the sentencing provisions. The first of these was, as discussed above, a federal constitutional claim, invoking Bradshaw and other relevant federal precedent. The second was not. Finally, petitioner's third claim on appeal—that his plea was cumulatively unknowing—invoked only state law and made no reference to rights guaranteed by the U.S. Constitution or Supreme Court precedent.

The first page of that brief's argument section does contain references to federal due process requirements:

> Due Process requires that a plea of guilty must be affirmatively shown to be voluntary and intelligent before it can be accepted. Boykin v. Alabama, 395 U.S. 238 (1969); U.S. Const. Amends. V, XIV; Ill. Const. 1970, Art I, § 2. Because due process was violated in this case, this Honorable Court should allow Mr. Garcia to withdraw his plea and re-enter it, if he chooses, with full understanding of what he is doing.

Petitioner's Direct Appeal Brief at 16, People v. Garcia, No. 2-06-0909. But this passing reference could not, without more, have specifically apprised the court that petitioner was presenting the sentencing cap issue as a federal constitutional claim, nor did it offer sufficient legal principles to allow the court to resolve that issue on a federal basis. See Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992) (citing Picard v. Conor, 404 U.S. 270, 278 (1971)); Harding v. Sternes, 380 F.3d 1034, 1047 (7th Cir. 2004) ("introductory sentence" in state court brief

11

referring to "constitutional right," after which petitioner failed to argue the federal nature of the claim, was a "passing reference" to a federal claim that was not sufficient for fair presentment).

Even if petitioner had fairly presented his claim to the appellate court, it would nonetheless be procedurally defaulted because his petition for leave to appeal to the Illinois Supreme Court also failed to present it as a federal constitutional claim. See O'Sullivan, 526 U.S. at 844-45. Petitioner claimed, in part, that his plea was not "knowing and voluntary" because he was deprived of the "due process right to be properly and fully admonished." In support, he cited an Illinois Appellate Court case[10] and the Fourteenth Amendment of the United States Constitution. PLA at 10, People v. Garcia, No. 107131. But other than those passing references to due process, the sentencing-cap argument largely relied on a comparison of Illinois Supreme Court Rule 402 and Fed. R. Crim. P. 11(b)(1)(N), which requires that before a court accepts a guilty plea, it "must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." His presentation of this claim thus deprived the Illinois Supreme Court of an opportunity to rule on the federal constitutional argument he now advances.

The court may excuse procedural default upon a showing of cause and prejudice or actual innocence, Coleman v. Thompson, 501 U.S. 722, 750 (1991), but petitioner has not argued—let alone established—either. See Crockett v. Hulick, 542 F.3d 1183, 1193 (7th Cir. 2008). To demonstrate cause and prejudice, petitioner must show that an "objective factor external to the defense impeded [petitioner's] counsel's efforts to comply with the State's procedural rule." Guest v. McCann, 474 F.3d 926, 929 (7th Cir. 2007) (internal quotations omitted). Petitioner

---

[10] People v. Whitfield, 217 Ill.2d 177, 188 (Ill. App. Ct. 2005).

12

has not attempted to show—nor, as the record reflects, could he show—cause for failing to raise these claims through a complete round of state court review. As for actual innocence, "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (internal citations and quotations omitted). But the factual basis for the plea, as stated on the record, was extensive and uncontested; the evidence included test results that matched petitioner's DNA to a vaginal swab taken from the victim, the victim's testimony and recorded 911 call, and petitioner's written confessions. Given this overwhelming evidence of his factual guilt, petitioner cannot, and does not attempt to, suggest that the error in his plea colloquy "has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). Therefore, the court cannot excuse the procedural default, and thus denies petitioner's second claim.

## III. Certificate of Appealability

This court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A habeas petitioner is entitled to a certificate of appealability only if he has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Evans v. Circuit Court of Cook County, Ill., 569 F.3d 665, 667 (7th Cir. 2009). To make that showing, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Petitioner's first claim is not a matter over which reasonable jurists could debate. In fact, courts that have considered the issue have found that Bradshaw does not preclude application of Henderson's presumption. E.g., State v. Daughtry, 18 A.3d 60, (Md. Ct. App. 2011) ("We are convinced that the Supreme Court's decision in Bradshaw did not affect the limited viability of the presumption as set forth originally in dicta in Henderson."). Most courts have simply continued to apply Henderson without reference to any possible effect Bradshaw might have had. E.g., Maltsev v. Albany County Prob. Dep't., 303 Fed. App'x 973, 974 (2d Cir. 2008) (holding that plea colloquy failing to describe an element of the offense comported with due process because of Henderson presumption); Desrosier v. Bissonnette, 502 F.3d 38, 41 (1st Cir. 2007) (quoting Henderson, 426 U.S. at 647, for proposition that defense counsel need not expressly state that he explained the elements to the defendant, because "'it may be appropriate to presume that . . . defense counsel . . . explain[ed] the nature of the offense'"); Root v. Martel, No. CV 08-4219-SJO (OP), 2010 WL 6548492, at *7 (C.D. Cal. Oct. 29, 2010) ("[T]he Court can assume that counsel explained the nature of the offense in sufficient detail, Henderson, 426 U.S. at 647.").

Petitioner unpersuasively suggests that some courts have expressed the view that after Bradshaw, a trial judge cannot rely on the presumption that defense counsel has sufficiently explained to the defendant the nature of the offense to which he is pleading guilty. He cites Abrams v. State, 933 A.2d 887, 900 (Md. Ct. Spec. App. 2007), but that court's analysis of Bradshaw was overruled in State v. Daughtry, 18 A.3d 60, 68 (Md. 2011) ("We are convicted that the Supreme Court's decision in Bradshaw did not affect the limited viability of the presumption as set forth originally in dicta in Henderson.").

14

He also cites People v. Van Bui, 2008 Guam 8 ¶ 30 (Guam 2008), which held that the defendant's plea was not knowing, intelligent, and voluntary when the record indicated that he "was not adequately informed of the intent element of the offense to which he pleaded guilty." That court, however, did not find that Henderson was invalid after Bradshaw. In fact, it explicitly declined to do so, instead explaining that " such a presumption cannot be applied under the unusual circumstances of the case, where [a] last-minute switch to the [charges in] the plea provides a positive suggestion that the elements of the crime to which Van Bui pleaded guilty were not explained to him." Id. at ¶ 26 (citations and quotations omitted). Further, that court has continued to apply the Henderson presumption in subsequent cases, requiring only that, as here, the trial court "inquired whether [the defendant] understood the nature of the charges to which he was pleading guilty." People v. Manley, No. CRA09-003, 2010 WL 5209377, at *4 (Guam Mar. 9, 2010).

Petitioner also cites Jones v. State, 936 So. 2d 993, 998 (Miss. Ct. App. 2006), which read Bradshaw as requiring "a reliable indication that the defendant has had the elements of his offense explained." But that case confronted the issue of whether a signed assurance that the defendant had discussed the charges with his attorney could constitute a "showing on the record that either counsel or the trial judge explained the elements of the crime to the defendant." Id. at 996. The court was not addressing the issue of whether Henderson's presumption remained valid after Bradshaw. Because petitioner has not identified, nor has the court located, any support for his claim, the court cannot say that this is an issue over which reasonable jurists might differ, and declines to certify this issue for appeal.

15

Finally, when the court has denied a habeas petition on procedural grounds without reaching the petition's underlying constitutional claims—as is the case here for petitioner's second claim—petitioner must also show that reasonable jurists could debate whether the court's procedural ruling was correct. <u>Slack</u>, 529 U.S. at 484-85. As explained above, petitioner's second claim is undisputedly procedurally defaulted. The court therefore declines to issue a certificate of appealability on this claim as well.

## **CONCLUSION**

For the reasons discussed above, the petition for a writ of habeas corpus is denied. The court declines to issue a certificate of appealability.


**ENTER:** July 6, 2011

_____
**Robert W. Gettleman
United States District Judge**